The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Amy C. Lannard presiding. Good morning. This is case number 423-0245, People v. Thomas J. Tazelaar. And counsel for the appellant, if you'll please state your name for the record. Good morning. My name is Nicholas Gabb. I'm here with the Office of the State Appellate Defender, representing the appellant, Mr. Thomas Tazelaar. And thank you. Tazelaar, then, is the pronunciation of the last name? I'm not entirely certain. I think it may be Tazelaar. I'm not certain. Counsel for the appellate, if you'll please state your name for the record. Timothy Ladrigan, counsel with the State of Illinois Appellate Prosecutor's Office. Thank you. Counsel, before we proceed, I want to mention that Justice Zinoff is ill today and unable to attend the proceedings. She will, of course, watch the recording of the proceedings and participate in resolution of the case. With that, counsel, you may proceed. Thank you, Your Honor. May it please the Court? Opposing counsel, good morning. My name is Nicholas Gabb from the Office of the State Appellate Defender, and I represent the appellant, Mr. Thomas Tazelaar. Mr. Tazelaar has raised three issues for this Court to consider. I shall be focusing on the first two, but pertaining to the time left in your questions, I am more than willing to discuss the third issue. The first issue I will be raising is that the State, at the close of its case in chief, failed to prove Count 1 beyond a reasonable doubt. Thus, Mr. Tazelaar's counsel below was ineffective for failing to move for a directed verdict before his client took the stand. The State charged Mr. Tazelaar with four counts of burglary, alleging he broke into the office of his employer and stole cash within it on the nights of June 20th, June 21st, June 23rd, and June 24th. Several photos were taken of Mr. Tazelaar, showing him in the office on three of those nights. No photo shows him in the office on June 20th. The only testimony offered by the State to show he was in the office on June 20th was offered by Mr. Donald Bessler, and that testimony was at times contradictory. The only other evidence offered was offered by Mr. Tazelaar himself when he testified in his defense. The State, at the close of their case, had not proven Mr. Tazelaar guilty beyond a reasonable doubt, even in a light most favorable to the State. Before Mr. Tazelaar took the stand, his attorney had an opportunity to secure an acquittal on Count 1 by moving for a directed verdict. His failure to do so was ineffective assistance of counsel. The standard for a directed verdict is the same as the sufficiency of the evidence standard on appeal, that standard being the court must consider the evidence in a light most favorable to the State and ask if a reasonable mind could fairly conclude the guilt of the accused beyond a reasonable doubt. The most important evidence for the State in directly proving Mr. Tazelaar's guilt was the photos. Two photos are in the record that were taken June 20th, the night charged... You say that was the most, counsel, you say that was the most important evidence. What about the testimony of the owner? He'd had no money missing, this guy is working for him, he suddenly starts having money missing, he puts the same amount in the drawer each night, it's missing the next day, he sees him on the cameras, he eventually confronts him about it, and after he leaves, he finds that his camera and parts of the camera, minus the chip that was in, so it isn't all based on pictures, is it? That's correct, your honor, however, I think the pictures are very important because they're what show Mr. Tazelaar directly in the office, and in fact, there are two photographs in the record from the night of June 20th, the night charged, however, when he was asked about those two photos, if you look at the photos, both show someone leaving the office, you see the back of their head at 10 o'clock p.m. No, I'm afraid that's where you're mistaken. If you look at that exhibit carefully, you'll see that the photograph below, which the victim identified as his back of his head, is actually on June 21st. The portion of the photograph that you see at the top of People's Exhibit No. 2, because he identifies People's 2 as himself, not People's 1 as you've indicated in your brief, he identifies himself as in the top photograph of People's Exhibit No. 2. You'll notice that the photograph that's marked as People's Exhibit No. 1 is not simply a continuation of the photograph in the one that you see marked as People's Exhibit No. 2. They're actually two completely separate photographs. It's also a motion-detecting camera, isn't it? It's a trail camera, right? That's correct, Your Honor. So what you've got in People's 1 is some motion of some sort that has triggered the camera, and then the top photo that you see is an individual with a hat on backwards, but that's not the photograph that the victim identified as himself. It was the photograph in People's 2, which is the back of his head. Now, isn't that correct? If I may, Your Honor, I believe that's correct. However, frankly, it's the defendant's opinion and our opinion that the exhibits that are presented with the cutoff photographs are frankly difficult to follow. There's two photographs on Exhibit 2, is my understanding. There are. There's two photographs on each one of them. Yes, and the top photograph on Exhibit 2 is cut off at the top of it, correct? It's my understanding. That's true, but it's not a continuation of People's Exhibit No. 1 because those are two different dates. You can also look at the times on the clock and tell that they're different. Okay. If I may, Your Honor, my understanding was that the second photograph on top of Exhibit 2 was the same photograph from Exhibit 1 cut off and produced on that. It's not. You can tell it isn't just by looking at it. I've got it up here on my screen. It's not just a cutoff of one and a continuation onto the next photograph. It's also a different date. In regards to the set to the top photo on Exhibit 2, Your Honor, I didn't realize that there was the same date on that actual printed photograph. I know that this bottom photo shows June 21st. I did not realize the top photo shows June 20th. Top photo shows June 20, 10.02 p.m. for both pictures. It's a motion-activated camera, so obviously as this individual is going out the door, because the second photograph is him closing the door behind him, obviously the motion of him going out the door is what must have activated the camera, but it's all on June 20. The picture that you want to identify as the victim as the same date of the defendant is actually a different date. It's the next night, June 21st. Moving on, Your Honor, if I may, the photograph on June 20th was not identified as showing Mr. Tasler. The first photograph that shows Mr. Tasler, by my understanding, is taken on June 21st. Mr. Tasler's testimony then is contradictory. He says that he doesn't start leaving cash out until after he sees the photographs. The first photograph he sees of Mr. Tasler is on June 21st. Following that, my apologies, Your Honor, following that logic, he could not have left money out then until the morning of June 22nd. When later questioned by the state, he claims that he left out money each and every night. It's a contradiction, and it's what serves as the basis for the argument that there is insufficient evidence to show Mr. Tasler was, in fact, in the office of Mr. Bessler on June 20th. Counsel, if I may, though, when we're talking about a motion for a directed verdict, the trial judge does not pass upon the weight of the evidence or the credibility of the witnesses or testing the sufficiency of the evidence to withstand a motion for a directed verdict. Instead, the judge is determining whether the state's evidence could support a verdict of guilty beyond a reasonable doubt. So, Mr. Bessler's testimony that he had the camera set up, which he clearly did by the June 20th date, and I believe at one point, and I understand you're arguing inconsistencies, but when we look at it in the light most favorable to the state, isn't that enough that it could support a verdict? I would disagree with that, Honor, because as we discussed earlier, this is a trail camera. It takes photographs based on movement. Were Mr. Tasler to have broken into the office the night of June 20th, if it follows, we'd have a photo of him entering the office. We don't see that, and I think that that's evidence that shows surely if it existed, the state would have presented it as evidence. They did not. I think the lack of that existing is fairly strong evidence, even in a light most favorable to the state, that Mr. Tasler was not in the office the night of June 20th. So, once again, you're hinging your whole argument on the photographs and disregarding Mr. Bessler's testimony in its entirety. I don't believe that. I don't believe that is true, Your Honor. I think Mr. Bessler's testimony, as I've stated before, is part of the basis for our motion. He says he doesn't leave cash out until the morning of June 22nd, and then he later says that he started leaving out cash on June 20th. There was no cash to steal on June 20th, and Mr. Tasler wasn't in the office that night. I don't think that that's sufficient evidence to have convicted him on count one. Regardless, the only other evidence that Mr. Tasler was in the office the night of June 20th, aside from that testimony of Mr. Bessler that I discussed, is Mr. Tasler's testimony himself on the stand when he prepares his defense. Not making that direct advertent, which we argue would have been granted, prejudiced Mr. Tasler in the fact that he was able to fill in the gaps of the state's evidence, showing that he was, in fact, in the office the night of June 20th by his own admission. And, counsel, I guess, if that's by his own admission, then why is he not showing up on the camera? I can't, I don't know the answer to that, Your Honor. That was what Mr. Tasler's defense was. What we argue now on appeal is that had his counsel moved for that directed verdict, he never would have had to account for the night of June 20th. And I'm really bringing this motion for the directed verdict. You're hanging your hat on that the photographs are the only evidence that someone was in that office, that that's the only thing we should rely upon, but the defendant's own admission is that he was there, but there's no photograph of that. That's correct, Your Honor. Thank you. And as I say to Your Honor, this court is just as well placed as a trial court to consider deficiency of the evidence. As you say, because as you stated earlier, no assessment of credibility can be made during a directed verdict. At this time, Your Honor, no further questions. I'd like to move on to my next case. Mr. Tasler's 32-year sentence violates Illinois' consecutive sentencing statute because it exceeds the maximum aggregate prison term allowed for the two most serious felony convictions because the offenses charged in this case were committed as part of a single course of conduct with no substantial change in the criminal objective. Now, Mr. Tasler, who we've been discussing, was convicted of four Class II felonies and was sentenced to four consecutive eight-year sentences, totaling 32 years in prison. The defense argues that under the relevant statute, that being 730 ILCS 5-5-8-4F2, the total aggregate maximum of his prison term should have been 28 years, the sum of the maximum of his two most serious convictions. The Illinois Supreme Court, in the case of People v. Bull, defined course of conduct. Conduct was defined as an act or series of acts in the accompanying mental state. The term course of conduct is not separately defined. The court concluded that the phrases could include a range of activity and it is not necessarily confined to a single incident. The Second District also, in the case of People v. Daniels, held the phrase to apply only to those offenses committed during single course of conduct guided by an overarching criminal objective. Mr. Tasler's acts, we argue, meet this definition. He committed a series of acts, the burglaries, in the same mental state, in the same methodology, four nights in a row across five calendar days, to steal cash from his employers by sneaking in- and steal something. It's all one crime. I don't believe we're arguing, Your Honor, that it's one crime, but that this is the same criminal course of conduct. Well, but that's the whole theory behind the sentencing. It's essentially one crime. That's why they're calling it a single course of conduct. This is four separate burglaries. You know, you'd have me, if he broke in four times that night and just kept coming back and stealing something, I'd be with you. But this is four distinct burglaries on four different nights. Each night requires a separate, for use of better terms, breaking and entering. How can that be one single course of conduct? Because, Your Honor, when they define course of conduct, the Supreme Court, as far as I can tell from my research, no court since or otherwise has defined any kind of timeliness aspect to this course of conduct definition. Well, the case you cite in support is People v. Thompson, which is one 90-minute email exchange where there's no separation between each communication beyond a few minutes. That was correct, Your Honor. How can that be somehow similar to this, where you have four distinct breaking and entering events on four separate nights? Because, Your Honor, what we're arguing is that these have the same overarching criminal objective, and that's how the Supreme Court defined course of conduct, that what mattered was the overarching criminal objective. And it's also defined as a range of activities, not a single incident. And that's where we argue that this, in fact, can be extended to that because it is the same. Range of activity doesn't mean...range of activity is not distinct from separate incidents. It's just saying you could do a number of different things but they all have to be part of one single course of conduct. I think what our argument lies on, Your Honor, is that the fact that it's an overarching criminal objective and it's a series of acts. This is a series of burglaries with the same criminal objective carried out in the same manner. So let me make sure I understand this. If a guy breaks into four separate houses on four separate nights, since he's intending on committing a burglary in each incident, that's only one burglary. I don't believe that that's what we're attempting to argue here, Your Honor. He broke into the same office, the office of his employer. That's why we argue it's the same overarching criminal objective. Well, how does that distinguish it? I don't understand. What's the difference between breaking into four separate residences on four separate nights and breaking into the same residence four nights in a row? I think the difference is, Your Honor, that four burglaries targeted at a single residence, or in this case a single business, is the same criminal target. The objective is to steal cash. I didn't see criminal target in the definition anywhere  in the statute. Counsel, when we look at this, the People v. Bull case from the Supreme Court, I mean, the court in that case noted that it's a longstanding pattern of sexual abuse, but noted the assaults were separate events committed several days apart with substantial interruptions in time. I guess as I look at the facts of this case, it appears to me that while there may be a couple of consecutive days, there's still a break, they're days apart. There was the act of entering. This is not a situation where he went in on one occasion, took the money from the drawer, took some money from a safe, took multiple things during one act and was charged with four different counts. These appear to be very distinct separate events, despite the fact that they may have the same location being the target, as you have put it. But how do you square with that statement from the Supreme Court that they're separate events committed several days apart? If I may, Your Honor, in fact, I'd like to turn to something that the state below said in its closing argument that I think goes along with our argument here, that these are a series of events. On the record on page 113, the state is quoted beginning their closing argument saying, we charged four different counts of burglary. It's really the same office, the same address each and every time. I believe that that follows with our argument that this is the same series of acts. It is the same. The legal definition is now going to be based upon the state's closing argument. Your Honor, I think what it shows is that the state itself felt that this was the same series of events and that's how they argued it and that's how they charged it. But this is a question of law. That's correct, Your Honor. So they can be wrong and the law is still the law. That is correct, Your Honor. And counsel, wouldn't you concede that based on the sentence the trial court imposed, that perhaps without an express finding, it was clear that the court did distinguish this to be separate and distinct events and not part of a proper loss? Yes. And so this could be reached under an abusive discretion standard or under plain error, as I argue in my brief, for defense counsel failing to make this argument during sentencing. And what is the best evidence that the court's decision that this was not a single course of conduct was unreasonable or arbitrary? Your Honor, I think simply because Your Honor, if I may respond to that, you know, I think my argument is far weaker when it comes to abusive discretion standard than it is in regards to the standard under ineffective assistance of counsel. However, I think the strongest argument is that this is four nights in a row. This is well across four calendar days. If you look at the times, it's four nights in a row, two of them are at 12 or 2 a.m. and one at 1.20 a.m. It's a series of events. It's the same overarching criminal objective. I think that's where the strongest portion of my argument lies. Your Honor, I saw that my orange light had flashed up shortly ago. If there's no further questions, I merely, I see that I'm out of time. Thank you, Your Honors. You have time for rebuttal. Counsel, you may proceed. Thank you, Your Honors. May it please counsel. I don't have a great deal to add to the brief that I've already filed, but I will address very briefly the issue number one as to whether or not a motion for direct verdict would have been granted. I note that the court has already properly addressed what the standard of review would be in this matter, what the state or what the defendant would have to believe that the defendant would have been successful with such a motion and therefore counsel is not ineffective for failing to make it. A great deal has been made over a inconsistency in Mr. Beeler's testimony, that being that he stated he took no action until after looking at the photographs. I think if you look at the record, what defense counsel is relying upon is a question put to Mr. Beeler or Bessler by the prosecutor to the effect, looking at these photographs, the question was take a look at these photographs that we have in front of us, exhibits one through four, what did you do? And that's when Mr. Beeler says he began to take action to put up a trail camera or whatnot. It's somewhat confusing or inconsistent with his having put out $8 on four separate evenings and having been have that money stolen on four separate evenings, that being the 20th, 21st, 23rd, 24th. But nevertheless, I think that's clarified in Mr. Beesler's subsequent testimony. So I agree with counsel, if you want to find an inconsistency in there or you want to find confusion, I suppose you could, but I think that the prosecutor did an adequate job of clarifying that inconsistency later in his testimony. And I think there was sufficient evidence to defeat any type of motion for directive verdict that would or could have been made. With regard to the single course of conduct, you know, I, again, I agree with the court's observations. I don't think this was, this case presents the facts that section 84F2 was meant to address. It's just four separate burglaries over five individual days. The fact that we have a common victim and a common location does not suggest a single course of conduct. And I'm unaware of any law that or case that has suggested it does. So, and if the court has no further questions of me, thank you, Your Honors. Seeing none, counsel, you may proceed. Thank you, Your Honors. I'll be brief. In regards to, I'm going to focus most of this on issue two. In regards to the course of conduct question, again, I think that the important thing here is that the Supreme Court did not define a timeliness aspect. The definition used is a range of activities not necessarily confined to a single incident. And I think that's what we have here. We have a series of burglaries, yes, across four nights in a row across five calendar days that were committed with the same overarching criminal objective of Mr. Tasvore to steal cash left out by his employer in the office. And I think that that's what we have shown here and that violates the sentencing statute as shown. And finally, Your Honors, I just, if there are no questions, I will just move to my prayer for relief. Mr. Tasvore asked his court to reverse his conviction as to count one and reduce his sentence to 24 years. And that his 32-year or 24-year sentence, if his court finds in favor of argument one, is excessive and asked his court to reduce his sentence to seven years as originally requested. Alternatively, Mr. Tasvore asked his court to reverse and remand for a new sentencing hearing consistent with that statute. Thank you. The court will take this matter under advisement and the court stands in recess. Thank you, counsel.